**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-3080-WJM-KAS

EDWARD FREE,

    Plaintiff,

v.

DAVID KRAMER,
COLORADO AGRI PRODUCTS, and

    Defendants.

## ORDER DENYING MOTION TO DISMISS

Plaintiff Edward Free filed this suit against Defendants David Kramer and Colorado Agri Products ("CAP") (jointly, "Defendants"), originally bringing claims of racketeering, wrongful discharge in violation of public policy, abuse of process, intentional infliction of emotional distress, promissory estoppel, slander per se, and civil theft. (ECF No. 10.)  In its Order dated August 31, 2023 ("Prior Order"), the Court granted in part and denied in part Defendants' Joint Motion to Dismiss Amended Complaint[1] (ECF No. 12).  (ECF No. 32 at 17.)  The Prior Order dismissed the racketeering, promissory estoppel, and abuse of process claims with prejudice and dismissed the wrongful discharge in violation of public policy and civil theft claims without prejudice.  (*Id.*)  Additionally, the Court granted Plaintiff leave to file a motion for leave to file a Second Amended Complaint ("SAC") with respect to the claims dismissed without prejudice.  (*Id.*)  Plaintiff filed a motion for leave (ECF No. 36), which was

---

[1] Defendants did not seek to dismiss the slander per se claim.  (ECF No. 32 at 1.)

granted by retired United States Magistrate Judge Kristen L. Mix (ECF No. 38), and Plaintiff filed the SAC (ECF No. 39).

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") (ECF No. 40), which has been fully briefed. (ECF Nos. 41, 42.) The Motion seeks only to dismiss the repleaded wrongful discharge in violation of public policy and civil theft claims. (ECF No. 40 at 2–3.) For the reasons stated below, the Motion is denied.

## I. BACKGROUND[2]

The Court assumes the parties' familiarity with the facts of this action and the Background section included in the Court's Prior Order. (ECF No. 32 at 1–5.) The Court therefore incorporates that Background section by reference.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A. Wrongful Discharge in Violation of Public Policy

The elements of a claim of wrongful discharge in violation of public policy are:

> (1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute related to public health, safety, or welfare, or would undermine a clearly expressed policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) the employee was terminated as the result of refusing to perform the act directed by the employer; and (4) the employer was aware

3

>    that the employee's refusal to perform the act was based on
>    the employee's reasonable belief that the directed act was
>    unlawful.

*Bonidy v. Vail Valley Ctr. Aesthetic Dentistry, P.C.*, 232 P.3d 277, 281 (Colo. App. 2010).  In the Prior Order, the Court concluded that Plaintiff failed to adequately plead the second and fourth elements.  (ECF No. 32 at 11–12.)  The Court concluded that "[t]hough Plaintiff has failed to plead a plausible claim in his current complaint, he could well do so in a further amended complaint.  Therefore, this claim is dismissed without prejudice."  (*Id.* at 12.)

Defendants argue that the SAC still fails to plausibly allege either the second or fourth elements of a claim of wrongful discharge in violation of public policy.  (ECF No. 40 at 3–7.)  Defendants again give particular focus to the second element and urge the Court to scrutinize the allegedly illegal action Plaintiff refused to take and whether it would (i) violate a specific statute related to public health, safety, or welfare, (ii) undermine a clearly expressed policy related Plaintiff's basic responsibility as a citizen, or (iii) undermine a clearly expressed policy related Plaintiff's right or privilege as a worker.  (*See id.* at 4–6.)  Defendants argue that Plaintiff points to no statute specifically related to public health, safety, or welfare.  (*Id.* at 4–5.)  Further, they argue whistleblowing on an employer's illegal conduct is neither a basic responsibility as a citizen, like completing jury duty, nor a job-related right or privilege, like payment for travel time or the ability to file a worker's compensation claim.  (*Id.*)

Plaintiff asserts he has alleged facts sufficient to meet all four elements and includes a table[3] matching each element with associated facts in the SAC.  (ECF No. 41

---

[3] As an aside, the Court notes that this table's text is single spaced, in violation of the Court's Local Rules.  *See* D.C.COLO.LCivR 10.1(d).

4

at 4–7.) With respect to the second element, Plaintiff takes a blunderbuss approach. For instance, he quotes from paragraph 102 of the SAC:

> CAP and Mr. Kramer's repeated instruction to Mr. Free (including by threats and intimidation in the course of his employment as General Manager of [Bridgeport Ethanol, LLC ("BPE")]), to stay silent and not report Mr. Kramer's self-dealings to the Board constituted an instruction to Mr. Free to perform the illegal acts of fraud, fraudulent concealment, and fraudulent misrepresentation which potentially aided and abetted others' violations of the Colorado Antitrust Act of 1992, Colorado Unfair Practices Act, Colo. Rev. Stat. § 6-2-101, et seq., the Sherman Antitrust Act of 1890, as amended, 15 U.S.C. § 1, et seq., the Federal Trade Commission Act, and the Anti-Kickback Act of 1986.

(ECF No. 41 at 5 (quoting ECF No. 39 at 18).) He also quotes from paragraph 107, which alleges that Plaintiff "exercised his basic responsibilities as a citizen, and his rights and privileges as a worker, to blow the whistle on Mr. Kramer's anticompetitive activities and entering into undisclosed kickback deals behind the BPE Board and investors' backs." (*Id.* (quoting ECF No. 39 at 19).)

    1.    <u>Second Element</u>

As Defendants point out, there are three kinds of illegal actions an employee can refuse to take to satisfy the second element. With respect to two of the three, Plaintiff points only to the conclusory allegations contained in paragraph 107 of the SAC. (*Id.*) Plaintiff's "formulaic recitation" of the second element contained in paragraph 107 is not entitled to a presumption of truth. *Robbins*, 519 F.3d at 1247. Therefore, the Court focuses on whether Plaintiff plausibly alleges that he refused to engage in conduct that would have violated a specific statute related to public health, safety, or welfare.

The Court takes a capacious view of "public welfare" in light of the facts of *Martin Marietta Corporation v. Lorenz*, 823 P.2d 100 (Colo. 1992) (*en banc*), the case in which

5

the Colorado Supreme Court first recognized the public policy exception to at-will employment. *Lorenz*, 823 P.2d at 114 ("[I]t is quite plain to us that the retroactive application of the public-policy exception will have the salutary effect of prohibiting an employer from discharging an employee for refusing to engage in conduct clearly illegal or detrimental to the public good—whether that conduct be the commission of a crime, the abandonment of the employee's civic duty, or the forfeiture of a job-related right or privilege."). In *Lorenz*, the Colorado Supreme Court held that an employee's refusal to engage in conduct that would violate a federal criminal statute satisfied the second element. *Id.* at 110–11.

Despite Plaintiff's failure to analyze any of the statutes he references, or explain how failing to disclose Kramer's alleged self-dealing would violate those statutes, the Court concludes that the Anti-Kickback Act of 1986, 41 U.S.C. §§ 8701, *et seq.* ("Act"), supports Plaintiff's claim. Because the Court so concludes, it does not consider whether the other statutes Plaintiff cites could also support Plaintiff's claim.

The Act makes it a crime to "solicit, accept, or attempt to accept a kickback." 41 U.S.C. § 8702(b). When interpreting whether a statute announces a clear public policy for purposes of a wrongful discharge in violation of public policy claim, Colorado courts apply the plain and ordinary meaning of its language. *Slaughter v. John Elway Dodge Southwest/AutoNation*, 107 P.3d 1165, 1168 (Colo. App. 2005). The plain and ordinary language of the Act makes it clear to the Court that Congress has embraced a robust and full-throated public policy in this country of making it unlawful for individuals to engage in the type and nature of kickback activities and schemes alleged in this action.

Plaintiff alleges that Kramer was accepting kickbacks, and that he ordered and

6

otherwise compelled Plaintiff to assist in concealing those kickback activities. (ECF No. 39 at 18.) On these facts, the Court easily concludes that Plaintiff has plausibly alleged in the SAC that Kramer directed him to commit an illegal act in violation of public policy, bringing him within the ambit of the second element of the wrongful discharge tort recognized by the Colorado Supreme Court in *Lorenz*.

2. Fourth Element

Despite Defendants' arguments to the contrary, the Court also easily concludes that Plaintiff has plausibly alleged the fourth element of a wrongful discharge in violation of public policy claim. Plaintiff specifically alleges that he confronted Kramer about his kickback scheme and urged Kramer to disclose the kickbacks to the board of directors, or else Plaintiff would do so himself. (ECF No. 39 at 17–18.) In response to this, Kramer instructed Plaintiff to conceal the kickbacks, and after Plaintiff refused, he was fired. (*Id.*) While there is no specific allegation about Kramer's mental state, a reasonable factfinder could infer that Kramer knew the reasons for Plaintiff's objections to his kickback scheme.

Therefore, with respect to Plaintiff's wrongful discharge in violation of public policy claim, the Motion is denied.

**B.  Civil Theft**

As the Court previously stated, "[t]o prevail on [a claim of civil theft] the plaintiff must 'establish that (1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property.'" (ECF No. 32 at 15 (quoting *Welch v. Saunders*, 720 F. App'x 476, 480 (10th Cir. 2017) (second alteration in original)).) With this standard in mind, the Court concluded Plaintiff failed to adequately plead the first element for the

7

following reasons:

> Based on the allegations in the Amended Complaint, the Court cannot determine whether Plaintiff had a possessory right in CAP's profits. It is perhaps more likely that profit-sharing determinations would be made once a year and, when Plaintiff was fired, any future profits were still indeterminate; however, it is not hard to imagine another arrangement—perhaps one based on quarterly profits. Or perhaps Plaintiff was fired after CAP's fiscal year ended but before profit shares had been distributed. Because Plaintiff's possessory interest in CAP's profits depends on the specific terms of his employment, which are not alleged with sufficient detail in the Amended Complaint, the Court dismisses his civil theft claim. But because there may be a set of facts that Plaintiff could allege that would plausibly state a civil theft claim, this dismissal is without prejudice.

(*Id.* at 16.)

Defendants argue that "Plaintiff failed to provide the requested details regarding" the terms of his employment as they relate to his "possessory interest in CAP's profits." (ECF No. 40 at 9.) Instead, they argue he offers only conclusory allegations in paragraphs 159 and 162, which the Court can properly ignore. (*Id.*) Further, they emphasize that Plaintiff admits his profit share is determined based on the previous year's profits, and therefore argue that any possessory interest in profit shares from 2021 "had not yet materialized at the time he was terminated on May 19, 2021." (*Id.* at 10.)

Plaintiff responds by clarifying the theory underlying his civil theft claim. Plaintiff explains that he is not seeking compensation for the 2021 profit share he would have received if Kramer had not fired him. (ECF No. 41 at 8.) Instead, Plaintiff is only "seeking to recover the reduction in the total amount of past [profit shares] caused by" Kramer's misappropriation "of company funds during . . . the years Plaintiff was employed as General Manager for BPE and for which he already received a share of

8

the profits." (*Id.*)  For support, he cites paragraphs of the SAC that allege Plaintiff was a profit-sharing employee who received a portion of CAP's profits, Kramer's kickback scheme reduced CAP's profits, and the reduction in CAP's profits directly reduced his overall compensation.  (*Id.* at 9 (citing ECF No. 39 at 26–27).)

The Court finds these allegations sufficient to plausibly allege a claim for civil theft; however, due to the relative lack of details in Plaintiff's allegations describing the terms of his employment, the Court expresses some reservations.  Plaintiff's claim depends on a direct, pro rata relationship between CAP's profits and Plaintiff's annual profit share.  Though Plaintiff alleged his profit shares were reduced for the years during which Kramer was receiving kickbacks, he fails to allege the kind of direct relationship he will ultimately have to establish in order to survive a motion for summary judgment.  (*See* ECF No. 39 at 25–27.)  Nevertheless, with respect to Plaintiff's civil theft claim, at this stage of the proceedings the Motion is denied.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 40) is DENIED as set forth above.

Dated this 25th day of October, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

9