IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-3080-WJM-KAS

EDWARD FREE,

    Plaintiff,

v.

DAVID KRAMER,
COLORADO AGRI PRODUCTS, and

    Defendants.

---

**ORDER REGARDING MOTION TO ENFORCE
PURPORTED SETTLEMENT AGREEMENT**

---

Plaintiff Edward Free sued Defendants David Kramer and Colorado Agri Products ("CAP") (jointly, "Defendants"), originally bringing claims of racketeering, wrongful discharge in violation of public policy, abuse of process, intentional infliction of emotional distress, promissory estoppel, slander per se, and civil theft.  (ECF No. 10.) Years later, the parties attended a court settlement conference which, according to Defendants, resulted in a settlement as to all claims.

Before the Court is Defendants' Motion to Enforce Settlement Agreement ("Motion") (ECF No. 100), which is fully briefed (ECF Nos. 108, 110).  For the following reasons, the Court directs the parties to refile their briefing on the Motion as set forth below.

**I. PERTINENT BACKGROUND**

The parties are familiar with the general background of this case from, among

other sources, the Court's orders on Defendants' motions to dismiss. (ECF Nos. 32, 56.) The Court incorporates that background here and adds the following pertinent facts.[1]

On June 18, 2024, the parties attended a settlement conference before United States Magistrate Judge Kathryn A. Starnella. (ECF No. 90.) Later that day, Judge Starnella sent the parties the following e-mail:

> Counsel:
>
> Thank you for the time and effort you put into preparing for today's settlement conference and in getting your clients to reach an agreement. I am grateful for your thorough and thoughtful settlement statements.
>
> I've memorialized the basic, key terms in the attached term sheet. If no changes are needed, please have your clients sign the attachment (no e-signatures, contrary to what I mentioned to you in person or over the phone). Please then scan and return the signed term sheet by email. If possible, please send me the signed term sheet by end of day on Thursday (recognizing that tomorrow is a holiday).
>
> The minutes from today's conference will include a settlement papers deadline. Please let me know if 45 days is adequate.

(ECF No. 100 at 16.)

Consistent with this e-mail, Defendants assert that "the case settled on basic terms as communicated to the parties by Judge Starnella, with the exception of one

---

[1] The Court draws the following pertinent facts from the docket, where applicable, and the parties' briefing on Defendants' Motion to Enforce Settlement Agreement. (ECF Nos. 100, 108, 110.) Both parties acknowledge that they have either redacted or omitted in their entirety supporting documentation for these assertions to preserve confidentiality. (ECF No. 100 at 10 (noting that "[t]he details of the agreed-upon terms are confidential to the parties . . . ."); ECF No. 108 (noting that "Mr. Free has not attached the written communications referenced in this brief as exhibits" to avoid "disclosing to substance of confidential settlement communications").) As a result, the accuracy of the Court's factual assertions herein depends on the accuracy of the parties' briefing.

2

proposal that Judge Starnella discussed with the parties." (*Id.* at 2.)  Defendants claim that the exception is not a material term.  (*Id.*)  In Plaintiff's view, however, the parties did not reach "a meeting of the minds on the essential terms of an agreement at that Conference."  (ECF No. 108 at 4.)  Plaintiff claims he responded to Judge Starnella's e-mail "identifying specific issues with terms included in the proposed term sheet and expressly told [her] that issues with the terms could preclude settlement."  (*Id.* at 3.)  The parties agree that Plaintiff did not sign the term sheet attached to Judge Starnella's e-mail or any other document memorializing the alleged settlement agreement.  (*Id.*)  Shortly thereafter, Plaintiff canceled two depositions that were scheduled to take place over the next few days.  (ECF No. 100 at 2–3.)

On June 21, 2024, after several discussions between Judge Starnella and the parties, Judge Starnella sent another e-mail to the parties acknowledging a "hang-up with Plaintiff's execution of the basic settlement terms."  (*Id.* at 15.)  She continued, "I want to be clear that, in my view and pursuant to applicable precedent, there was a meeting of the minds as to all terms" with one exception.  (*Id.*)  The specifics of the exception are redacted, so the Court does not currently know what it pertains to, but Judge Starnella explained in the June 21 e-mail that she "do[es] not view this proposal as material to the already existing agreement."  (*Id.*)  Judge Starnella also entered a minute order stating: "[A] settlement was reached as to all claims and parties.  The parties shall file dismissal papers on or before August 2, 2024."  (ECF No. 91.)

That same day, Plaintiff filed a Motion for Leave to Amend the Scheduling Order for the Limited Purpose of Deposing a Key Witness.  (ECF No. 92.)  Therein, he explained that he cancelled one of the depositions because "the parties participated in a

3

settlement conference with Magistrate Judge Starnella, and settlement negotiations are ongoing." (*Id.* at 1–2.) Defendants moved to strike Plaintiff's motion to amend the scheduling order and subsequently filed a response. (ECF Nos. 94, 97.)

On June 28, 2024, Defendants tendered to Plaintiff a draft settlement agreement. (ECF No. 100 at 4.) Later, Plaintiff returned a counteroffer which, according to Defendants, was for "an additional 55% of the previously agreed-upon settlement sum." (*Id.*)

Defendants now move to enforce the settlement agreement allegedly reached between the parties at the settlement conference. (ECF No. 100.)

## II. APPLICABLE LAW

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). When deciding issues involving the formation, construction, and enforceability of a settlement agreement, federal courts apply state contract law. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000); *Bouldware v. Baldwin*, 545 F. Appx 725, 728 (10th Cir. 2013) ("[S]tate law governs the enforcement and interpretation of private settlement agreements even if they settle federal claims."). Under Colorado law, the essential elements of an agreement to settle a case are "a manifestation of agreement (an offer and acceptance) on payment, release, and case dismissal terms (the consideration) between parties who have the capacity and authority to agree." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 685–86 (10th Cir. 2001).

In order for a settlement agreement to be binding and enforceable, there must be

4

a "meeting of the minds" as to its terms and conditions. *H.W. Houston Constr. Co. v. Dist. Court*, 632 P.2d 563, 565 (Colo. 1981). Before the Court can find that an agreement has been reached, "it must appear that further negotiations are not required to work out important and essential terms." *Joseph Brazier, LTD. v. Specialty Bar Prod.'s Co.*, 2009 WL 690308, at *2 (D. Colo. March 12, 2009). "The terms of the settlement agreement must be clear, unambiguous, and capable of enforcement." *City & Cnty. of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1479 (D. Colo. 1993). Whether negotiations are sufficiently definite and final to create a binding contract is a question of fact. *Shoels v. Klebold*, 375 F.3d 1054, 1062 (10th Cir. 2004). "[E]vidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties." *I.M.A. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 & n.6 (Colo. 1986) (citations omitted). The party seeking to enforce a purported settlement agreement bears the burden of proving its existence by a preponderance of the evidence. *W. Dist. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Later dissatisfaction with the terms of a settlement agreement is not sufficient grounds to set it aside. *Brackens v. Sedgwick Claims Mgmt. Servs.*, Inc., 2008 WL 906121, at *3 (D. Colo. Apr. 1, 2008). "The law favors compromise and settlement and such resolution will typically be sustained by the court." *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997) (citing *R.T.C. v. Avon Center Holdings, Inc.*, 832 P.2d 1073, 1075 (Colo. App. 1992)).

5

### III. ANALYSIS

Defendants ask the Court to enforce the agreement allegedly reached by the parties at the settlement conference, arguing that the parties "reached an agreement as to the essential terms of payment, release of claims, and dismissal of the case, as well as a few other terms, as was substantiated by Judge Starnella." (ECF No. 100 at 10.) Defendants stress that oral agreements, such as the one purportedly reached here, are enforceable in Colorado. (*Id.* at 7–8.)

Plaintiff does not dispute that oral agreements generally can be enforced but maintains that Colorado law—specifically, the Colorado Dispute Resolution Act, § 13-22-301, C.R.S. (2024) ("CDRA"), *Yaekle v. Andrews*, 195 P.3d 1101 (Colo. 2008), and *Tuscany Custom Homes, LLC v. Westover*, 490 P.3d 1045 (Colo. App. 2020)—forbids courts from considering the evidence relied on by Defendants here to find the existence of a contract. (ECF No. 108 at 5.) That is, Plaintiff posits that the Court may not rely on communications made at the settlement conference, including documents memorializing communications made at the conference, such as Judge Starnella's follow-up e-mails, to determine whether the parties entered into a valid settlement agreement. (*Id.* at 7.)

After reviewing the parties' briefs and the authorities cited therein, the Court concludes that it may not, at this juncture, enforce the agreement allegedly reached by the parties at the settlement conference. As mentioned, a court can summarily enforce a settlement agreement only after it is satisfied that the parties reached a "meeting of the minds" as to its material terms and conditions. *H.W. Houston Constr. Co.*, 632 P.2d at 565. But here, the substantiating documents provided by the parties are redacted, so

6

the Court has no details before it revealing the exact terms of the purported settlement agreement, let alone whether they are clear and unambiguous and render further negotiations unnecessary.  *Joseph Brazier, LTD.*, 2009 WL 690308, at *2.  Hence, at this time the Court defers ruling on the Motion to the extent it seeks summary enforcement of the purported agreement.  To facilitate the Court in determining whether a binding agreement was reached between the parties, the parties shall refile their briefs on the Motion with unredacted versions of the documents on which they intend to rely.  The Court emphasizes that the documents[2] must continue to redact information that was provided in confidence to Judge Starnella at the settlement conference.[3]  *See* D.C.COLO.LCivR 16.6.

On this last point, the Court observes that the parties dispute what evidence the Court may consider to determine whether they entered into a binding oral agreement at the settlement conference.  Plaintiff relies on the CDRA, which provides:

> Any party or the mediator or mediation organization in a mediation service proceeding or a dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any information concerning *any mediation communication or any communication provided in confidence to the mediator or a mediation organization* . . . .

§ 13-22-307(2) (emphasis added).

---

[2] Such documents shall be accessible to only the parties and the Court pursuant to Restriction Level 1.

[3] To be clear, by directing the parties to produce these communications, the Court has not decided whether it will ultimately consider such evidence in a later dispositive ruling. Instead, the Court will admit and rely on such evidence only to the extent it later determines it is permissible to do so under the applicable law.  *See Tuscany Custom Homes, LLC*, 490 P.3d at 1042 (discerning error under the CDRA where the district court *admitted and relied on* confidential evidence in finding the existence of a binding contract).

7

The CDRA defines a "mediation communication" as "any oral or written communication prepared or expressed for the purposes of, in the course of, or pursuant to, any mediation services proceeding or dispute resolution program proceeding, including, but not limited to, any memoranda, notes, records, or work product of a mediator, mediation organization, or party." § 13-22-302(2.5). The Colorado Supreme Court has clarified that the phrase "mediation communication" "does not cover all communications made with an eye to resolving the dispute once parties have agreed to mediation. Rather, 'mediation communications' are limited to those made in the presence or at the behest of the mediator." *Yaekle*, 195 P.3d at 1109; *see also Yater v. Powderhorn Ski Co. LLC*, 2018 WL 776361, at *4 (D. Colo. Feb. 8, 2018) ("Documents pre-dating or subsequent to the actual mediation may be covered by the confidentiality contemplated by § 13–22–307, but the *Yaekle* decision makes clear such inquiry is fact-intensive.").

Defendants argue, however, that the CDRA does not apply here. (*See* ECF No. 110 at 3 ("Ultimately, the Parties were subject to the Local Rules of this Court, and Rule 16.6(e), rather than the CDRA, should apply.").) They point to another court in this District that recently declined to apply the CDRA in similar circumstances, instead applying Local Rule 16.6, which in pertinent part provides:

> (e) Confidentiality. A party or the magistrate judge in an alternative dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any information concerning any communication provided in confidence to the magistrate judge in connection with an early neutral evaluation or other alternative dispute resolution proceeding.

*Email on Acid LLC, v. 250ok, Inc.*, 2023 WL 3198216, at *1 (D. Colo. March 9, 2023)

8

(quoting D.C.COLO.LCivR 16.6(e)).

While the CDRA and Rule 16.6(e) are quite similar, the Court perceives one critical distinction: the CDRA broadly protects "any mediation communication or any communication provided in confidence to the mediator or a mediation organization," § 13-22-307(2), whereas Rule 16.6 only protects "any communication provided in confidence to the magistrate judge," D.C.COLO.LCivR 16.6.  This distinction could prove to be dispositive here because Defendants heavily rely on the agreement allegedly reached by the parties at the settlement conference and Judge Starnella's follow-up e-mails referring to that alleged agreement.  (*See, e.g.*, ECF No. 100 at 1 (moving the Court to find the existence of a contract because "each material term of the Parties' settlement agreement was offered and accepted during the Settlement Conference before Judge Starnella and immediately thereafter, as facilitated further by Judge Starnella").)  Under Rule 16.6, such communications would likely be admissible because the alleged settlement agreement between the parties, brokered by Judge Starnella, certainly was not "provided in confidence."  *See Email on Acid LLC,* 2023 WL 3198216, at *2 (adopting party's position that settlement agreement terms "communicated by Judge Hegarty to the parties" were not provided in confidence and thus were discoverable).

Conversely, such communications would appear to be inadmissible under the CDRA, since that statute more broadly protects any "mediation communication," regardless of whether it was "provided in confidence" to the mediator.  *See* § 13-22-307(2) (protecting both "any mediation communication *or* any communication provided in confidence to the mediator or a mediation organization") (emphasis added); *see also*

9

*Tuscany Custom Homes, LLC*, 490 P.3d at 1042 (applying the CDRA and reversing district court order enforcing settlement agreement where court "erroneously relied on evidence that disclosed mediation communications," including the mediator's follow-up e-mail memorializing the agreement allegedly reached at the mediation).

Given this difference between Local Rule 16.6 and the CDRA, the Court directs the parties to further address which legal principle applies here and why. Specifically, the parties shall discuss the potential applicability of the *Erie* doctrine to this issue—that is, whether the local rule and state statute are in conflict, are procedural or substantive,[4] *etc*. *See Walker v. Spina*, 359 F. Supp. 3d 1054, 1082 (D.N.M. 2019) (discussing the law regarding *Erie* and the Rules Enabling Act).

## IV. EVIDENTIARY HEARING

Lastly, the Court addresses the likely necessity of holding an evidentiary hearing on this matter. While "[a] court may summarily enforce a settlement agreement if it is undisputed that a settlement exists," it is error not to hold a hearing if the parties dispute the terms or existence of the settlement. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1242 (2001); *Yaekle v. Andrews*, 169 P.3d 196, 200 (Colo. App. 2007) (requiring

---

[4] The *Email on Acid LLC* court appeared to assume that Rule 16.6 was procedural and thus controlled. 2023 WL 3198216, at *1 ("Rules adopted pursuant to the Rules Enabling Act govern procedure in federal courts, notwithstanding state procedural law to the contrary."); *see id.* (expressing "doubts regarding Plaintiff's position that the CDRA is controlling law in the instant case"). Even assuming the CDRA applied, the court was "not persuaded that a settlement conference conducted by a federal magistrate judge pursuant to the United States District Court for the District of Colorado's ADR program qualifies as a 'mediation service' or 'dispute resolution program' under the Act." *Id.*

The Court welcomes the parties' further input on this issue, considering that the CDRA broadly defines "mediation services" and "dispute resolution programs" as "a process by which parties involved in a dispute, whether or not an action has been filed in court, agree to enter into one or more settlement discussions with a mediator in order to resolve their dispute." § 13-22-302, C.R.S. (2024).

10

an evidentiary hearing if the terms or existence of a settlement are in dispute and a party asks for a hearing). Here, Plaintiff disputes the existence of a settlement agreement, and Defendants request a hearing should the Court not outright grant their Motion. (ECF No. 100 at 12; *see generally* ECF Nos. 108, 110). Thus, assuming these remain the positions of the parties in their forthcoming briefing, the Court anticipates setting an evidentiary hearing on this matter in due course.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. No later than **November 19, 2024, t**he parties shall REFILE their briefs on the Motion with unredacted versions of the documents on which they intend to rely. The Court emphasizes that these documents must continue to redact information that was provided in confidence to Judge Starnella;

2. These refiled documents shall be filed and thus accessible to only the parties and the Court pursuant to Restriction Level 1;

3. Separately, and by no later than **November 25, 2024**, the parties shall contemporaneously brief the issue of whether Local Rule 16.6 or the CDRA controls here. Specifically, the parties shall discuss the potential applicability of the *Erie* doctrine to this issue—that is, at a minimum, the parties shall address whether the principles are in conflict, and are procedural or substantive; and

4. These supplemental briefs shall be limited to **7 pages**, exclusive of attorney signature blocks and certificate of service.

11

Dated this 15th day of November, 2024.

BY THE COURT:

_____

William J. Martinez
Senior United States District Judge

Case No. 1:21-cv-03080-WJM-KAS   Document 111   filed 11/15/24   USDC Colorado
pg 12 of 12